UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAURA PHILLIPS,

                              Plaintiff,

    -against-                                        6:16-CV-0219 (LEK/TWD)

CENTRAL NEW YORK PSYCHIATRIC
CENTER,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiff Laura Phillips commenced this action against defendants Central New York Psychiatric Center ("CNYPC"), Employee Health Services ("EHS"), and multiple employees of CYNPC, alleging, among other things, that they conspired to place her on involuntary leave due to her race and gender in violation of Title VII, 42 U.S.C. § 2000e *et seq*. Dkt. No. 1 ("Complaint"); Dkt. No. 9 ("Amended Complaint"). Presently before the Court is CYNPC's motion to dismiss. Dkt. No. 19 ("Motion"); see also Dkt. No. 19-6 ("Memorandum").[1] Phillips has not opposed the motion. For the following reasons, CNYPC's Motion is granted.

---

[1] EHS has also moved to dismiss any Title VII claims against it. Dkt. No. 20 ("EHS Motion"). But as discussed below, all claims against EHS have already been dismissed. Thus, the Court denies EHS's Motion as moot.

## II. BACKGROUND

### A. Factual Background[2]

On July 17, 2015, Phillips sent a letter to the Equal Employment Opportunity Comission ("EEOC") detailing the allegedly discriminatory conduct she experienced at CNYPC. Dkt. No. 19–3 ("EEOC Letter") at 1.[3] Though Phillips's letter to the EEOC describes multiple negative exchanges between her and her supervisors, most of them have no obvious connection to her race or gender. EEOC Letter. The Court will therefore recount only those that could conceivably reflect prohibited discrimination.

Phillips began working at CNYPC in August 2014. Id. at 1. She was placed on involuntary leave in October 2014. Id. Her return was contingent on the results of a medical examination designed to determine her fitness to perform her duties as a nurse. Id at 1, 20. The Nurse Mentors at CNYPC submitted a report and requested that Phillips undergo a medical examination to determine her ability to perform her job. Id. In the report, Phillips was described as "loud, obnoxious, careless, crazy, defiant, [and] sloppy." Id at 3. Phillips's EEOC Letter

---

[2] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations in the pleadings are accepted as true and form the basis of this section. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Further, because Phillips is proceeding pro se, the Court construes her pleadings liberally. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

[3] Though the EEOC Letter was not included in Phillips's Amended Complaint, which is the operative pleading in this case, it was filed as a supplemental exhibit to her Complaint. Dkt. No. 7-7 ("Exhibit 8"). The Court will consider the EEOC Letter because the Phillips is proceeding pro se, and therefore the original Complaint and attached exhibits should be considered in conjunction with the Amended Complaint. Augustus v. Brookdale Hosp. Med. Ctr., No. 13-CV-5374, 2015 WL 5655709, at *1 n.2 (E.D.N.Y. Sept. 24, 2015).

claims she was called sloppy because of her race. Id. Phillips claims that African-American hair "puffs up" uncontrollably, especially when it is humid or damp out. Id. Additionally, the letter claims that both in the Nurse's report and throughout her time at CNYPC, she was portrayed as "disgusting, sweaty, confused, slow, with vacuous eyes . . . easily distracted, in a fugue state, with poor memory." Id. at 3. Phillips also states that she was accused of eating hot dogs in front of patients, drinking a patient's drink, and administering and mixing medications incorrectly. Id. Phillips denies all of these accusations and claims that they reflect discriminatory animus. Id. at 1,3. As a result of the report, Phillips was placed on involuntary leave. Id. at 1.

Phillips asserts that her supervisors disliked her supervisors before she even began working at CNYPC. Id. at 3–4. This was allegedly because they were aware of her race as a result of investigations they had performed into her life and employment history. Id. at 3. Phillips suggests that she was treated with hostility upon her arrival because she had been placed on a "preferred list," which required CNYPC to hire her. Id. at 2. Phillips asserts that CYNPC was resistant to this hiring system. Id. To this allegation, Phillips claims that she got lost on her way to the interview and called to let CNYPC interviewers know she would there ten minutes late. Id. at 3. When she arrived, all the interviewers had left. Id. Further, upon arrival at orientation, she asked for time off to attend medical and legal appointments. Id. at 4. These requests were denied, and Phillips was told she would have to quit the orientation and come back at a later date. Id. at 4. Phillips resisted and ultimately was allowed to miss orientation time for her legal appointment on the basis of a note from her attorney. Id. at 5.

Early on, Phillips felt she was being treated unfairly, and she decided to speak with her union representative, Eric Ray. Id. She met with him for lunch on August 27, 2014, as this was

3

the only time he could meet with her. Id. Their meeting ran twenty minutes over Phillips's lunch period, and she was reprimanded for returning to work late even though she had a note from Ray. Id. Phillips believes Ray consistently sided with CNYPC over her. Id.

Throughout Phillip's orientation, her Nurse Mentors failed to provide her with the instruction and punitive-free learning environment that she felt new nurses should receive. Id. at 5–9. Rather, she was thrown into the mix and punished for mistakes even though she made her supervisors aware of her unfamiliarity with the tasks she was expected to perform. Id. Phillips was also reprimanded for tardiness. Id. at 9. At some point, Dawes began to refer to Phillips as "lazy, slow, stupid, fat, and more!" Id. None of the interactions described in Phillips's EEOC Letter include any language explicitly referencing her race or gender. EEOC Letter.

On November 23, 2015, the EEOC sent Phillips a right-to-sue letter, stating that she had ninety days from receipt to file a lawsuit. Dkt. No. 19-4 ("Right-to-Sue Letter"). It is unclear when she received the notice. Phillips's Amended Complaint asserts that she was fired by CYNPC because she is a minority and, in her own words, is "older, slow, with frizzy hair and dry-smacking [lips]," and has a "sweating, disgusting body." Am. Compl. at 4.[4] As with her EEOC Letter, Phillips has not alleged that any comments were ever made about her hair. Id.[5]

---

[4] The page numbers for Phillips's Amended Complaint refer to those generated by the Court's electronic filing system ("ECF").

[5] While Phillips's EEOC charge notes that she "was subjected to unwelcome comments regarding [her] disability and race from [her] supervisors and coworkers," Am. Compl. at 10, that document does not provide any details about those comments.

4

**B. Procedural History**

Phillips filed her Complaint on February 2, 2016. Compl. Pursuant to U.S. Magistrate Judge Thérèse Wiley Dancks's order on June 9, 2016, [Dkt. No. 8 ("IFP Application Order"),] Phillips filed her Amended Complaint on June 29, 2016. Am. Compl. Judge Dancks issued an Order and Report-Recommendation on July 14, 2016, which recommended dismissal of all of Phillips's claims except the Title VII claims against CNYPC. Dkt. No. 10 ("Report-Recommendation") at 15. On October 7, 2016, this Court adopted the Report-Recommendation and dismissed all claims except the Title VII claims against CNYPC. Dkt. No. 13 ("October Order") at 4–5. On February 1, 2017, CNYPC moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. CNYPC argues that Phillips has failed to allege a plausible connection between the conduct complained of and any racially discriminatory animus. Mem. at 8–16.

**III.   LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. Disparate Treatment

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

In order to set forth a prima facie case of disparate treatment in violation of Title VII, a plaintiff must allege that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant provides a legitimate, nondiscriminatory reason for the action,

"the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507 (internal citations omitted).

A complaint alleging employment discrimination is subject to a "lowered standard of review . . . at the motion to dismiss stage." Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "it must at a minimum assert nonconclusory factual matter sufficient to [render its claims plausible]." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014). In particular, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Verbal comments provide evidence of discriminatory intent when the plaintiff shows that "a nexus exists between the allegedly discriminatory statements and a defendant's decision to take action against the plaintiff." Yan v. Ziba Mode Inc., No. 15-CV-47, 2016 WL 1276456, at *4 (S.D.N.Y. Feb. 3, 2016) (quoting Zhang v. Barr Labs., Inc., No. 98-CV-571, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000)). To determine whether such a nexus exists, courts often weigh the following factors:

> 1) who made the remark, (i.e., whether it was a 'decision-maker, a supervisor,' or a low-level colleague); 2) when the remark was made in relation to the employment decision at issue; 3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and 4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Id. at *4 (quoting Henry v. Wyeth Pharms. Inc., 616 F.3d 134, 149 (2d Cir. 2010)).

CYNPC argues that Phillips's Title VII claims must be dismissed because she has failed to link the conduct described in her filings with any discriminatory animus. Mem. at 13–16. The Court agrees. Applying Henry's four-factor test, Phillips fails to allege the second and third factors and thus has not demonstrated the requisite discriminatory intent.[6]

As for the first factor, the remarks at issue were made by her Nurse Mentors and perhaps other coworkers. The Court infers this from Phillips's EEOC Letter, in which she claims that "in their report and throughout her time at CNYPC," she was portrayed negatively. EEOC Letter at 3. Though she does not explicitly state who "they" are, she refers to her Nurse Mentors in the previous sentence. Id. at 3. It therefore appears that the comments were made by people who influenced CNYPC's decision to place Phillips on involuntary leave, as she alleges that she learned about the leave from two Associate Personnel Administrators who told her that the nursing education department made the decision, with the approval of the Director of Human

---

[6] CNYPC states that Phillips's placement on involuntary leave was the only adverse employment action she experienced. Mem. at 8. That is correct because Phillips has not alleged any other conduct that could rise to the level of an adverse employment action. To qualify as an adverse employment action, the conduct at issue must be "materially adverse," which requires that the change in working conditions be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 638, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). In her EEOC Letter and Amended Complaint, Phillips describes multiple incidents where she received scrutiny and reprimands from her supervisors at CNYPC. Am. Compl. at 4–5; EEOC Letter at 1, 3, 5, 8–9, 12, 14, 16. Courts have found that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." Uddin v. City of New York, 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2000) (quoting Honey v. County of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)). Thus, the undoubtedly unpleasant verbal interactions between Phillips and her coworkers and supervisors cannot by themselves qualify as adverse employment actions.

Resources. Id. at 3, 20. According to Phillips, her Nurse Mentors were part of the nursing education department, and it was their report that ultimately led to Phillips's placement on involuntary leave. Id. Thus, this factor weighs in favor of inferring discriminatory intent.

Phillips's pleadings fail to satisfy the second factor. Phillips has not clarified when the remarks at issue were made in relation to her placement on involuntary leave. EEOC Letter; Am. Compl. She states only generally that she was fired because she is older and slow, has dry smacking lips, and is sweaty with a disgusting body. Am. Compl. at 4. She never indicates that anyone actually made these comments about her physical appearance, or if so, when. EEOC Letter; Am. Compl. In her letter to the EEOC, Phillips only states that she was portrayed negatively in her Nurse Mentor's report and throughout her time at CNYPC. EEOC Letter at 3. Thus, the temporal relationship between the remarks and her placement on involuntary leave is not clear, and this factor weighs in favor of dismissal.

With respect to the third and most important Henry factor, a reasonable jury could not view the alleged remarks as discriminatory. The majority of Phillips's letter to the EEOC outlines incidents in which supervisors or coworkers yelled at or reprimanded her, but none of them involve any language regarding her race or gender at all. EEOC Letter. Most of the exchanges, while undoubtedly unpleasant for Phillips, concern job performance. Id. She asserts that the Nurse's report described her as "loud, obnoxious, careless, crazy, defiant, sloppy, and with dry smacking lips." Id. at 3. While this description does not explicitly reference her race or gender, Phillips claims that she was described as sloppy due to her race. She stresses that African-American hair often "puffs up" uncontrollably, especially when the weather is humid or damp. Id. While a comment about the so-called "frizzy" hair of an African-American employee

9

could reflect racial animus, Phillips does not allege that anyone made such a comment at all. EEOC Letter; Am. Compl. And it is not enough that Phillips believes she was called "sloppy" because of the allegedly African-American characteristics of her hair. See Brodt v. City of New York, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("[A] plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'" (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999))). Phillips also asserts that in the report and throughout her time at CNYPC, she was portrayed as being "disgusting, sweaty, confused, slow, with vacuous eyes, easily distracted, in a fugue state, with poor memory, who eats hot dogs in front of patients, and drank a patient's drink." EEOC Letter at 3. There is no indication that these comments, however insulting, had anything to do with race or gender.[7]

With respect to the fourth factor, Phillips has alleged that the comments described in her Amended Complaint and EEOC Letter were related to CNYPC's decision to place her on involuntary leave, because they were listed in the Nurse's report that ultimately led to her leave. Id. at 3; Am. Compl. at 4. But this connection on its own is insufficient to state a Title VII claim because there is no reason to think the remarks at issue reflected discriminatory animus.

Weighing these four factors, and giving particular weight to the third factor (whether the remarks display discriminatory animus), the Court holds that Phillips has not alleged facts giving

---

[7] Moreover, even if Phillips's hair had been described as "frizzy," that alone might not demonstrate discriminatory animus. See Jones v. City of New York, No. 14-CV-0826, 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015) ("Although Jones may well have subjectively believed that defendant's comments about her weave were tied to her skin color, that is plainly insufficient.")

rise to an inference of discriminatory intent. Thus, her disparate treatment claim must be dismissed.[8]

### B. Hostile Work Environment

To state a Title VII hostile work environment claim, a plaintiff must first demonstrate that she experienced harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Alfano v Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must also show "that a specific basis exists for imputing the objectionable conduct to the employer." Id. A hostile work environment claim has "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In evaluating a hostile work environment claim, a court must have some "reason to believe" that the incidents were "motivated by the plaintiff's [protected characteristics]." Sanderson v. N.Y. State Elec. & Gas Corp., 560 F. App'x 88, 92 (2d Cir. 2014); see also Alfano, 294 F.3d at 374 (noting

---

[8] CNYPC also argues that dismissal of Phillips's Title VII claim is proper because she cannot raise an inference of discrimination via similarly situated comparators. Mem. at 12. The Court agrees. To create "an inference of race discrimination" in this way, "the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" Norville v. Staten Island Univ. Hosp. 196 F.3d 89, 95 (2d Cir. 1999) (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Nothing in Phillips's pleadings provides "any factual basis from which one could infer that any [non-African-American] employee similarly situated to [Phillips] was subject to differential treatment." Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). Further, Phillips's bare assertion that the "all white staff" at CNYPC "tried to get [her] out" because she is "a minority" is not sufficient to raise an inference of discriminatory intent. Am. Compl. at 4.

that, in order to state a "sex-based hostile work environment [claim] under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex").

The Court need not decide whether the conduct Phillips experienced at CNYPC was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Alfano, 294 F.3d at 373 (quoting Perry, 115 F.3d at 149 (2d Cir. 1997)), because she fails to allege facts suggesting her race or gender had any connection to the conduct described. The only allegation Phillips makes that could possibly be construed as reflecting racially discriminatory animus involves her "frizzy hair." Am. Compl. at 4. But as discussed above, she does not allege that anyone actually made the statement. Thus, because Phillips has not alleged a single incident involving her protected traits, her hostile work environment claim fails.

### C. Opportunity to Amend

A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). The Court must dismiss Phillips's Title VII claims, but there is no reason to think that amending the Amended Complaint would be futile, so the Court grants Phillips leave to amend her pleadings to cure the deficiencies identified in these claims.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that CNYPC's motion to dismiss (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that Phillips's Amended Complaint (Dkt. No. 9) is **DISMISSED with leave to amend**; and it is further

**ORDERED**, that if Phillips wishes to proceed with her Title VII claims, she must file a second amended complaint as set forth above within **thirty (30) days** of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that EHS's motion to dismiss (Dkt. No. 20) is **DENIED as moot**; and it is further

**ORDERED**, that EHS shall be terminated as a defendant in this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: July 05, 2017
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge